**DSMC, INC., Plaintiff,**

v.

**CONVERA CORP., Defendant.,**

and

**NGT LIBRARY, Intervenor–Applicant**

**No. CIV. 01–2284(EGS).**

United States District Court,
District of Columbia.

Aug. 29, 2002.

---

**4.** A separate Order of dismissal accompanies this Memorandum Opinion.

H. Jay Speigel, Esq., Mount Vernon, VA.

Julie Rubin Goldberg, Esq., Astrachan, Gunst, Goldman, and Thomas, Baltimore, MD.

James S. Kurz, Esq., Reed, Smith, Hazel & Thomas LLP, Falls Church, VA.

Anthony Herman, Esq., Covington & Burling, Washington.

## MEMORANDUM OPINION

SULLIVAN, District Judge.

Plaintiff DSMC, Incorporated ("DSMCi") filed this lawsuit against defendant Convera Corporation alleging violations of the Uniform Trade Secret Act and the common law torts of civil conspiracy and unjust enrichment. DSMCi later amended its complaint to include allegations of violations of federal copyright laws. The claims against Convera are related to a contract between DSMCi and National Geographic Television Library, Inc. ("NGTL"), as a result of which, alleges DSMCi, Convera was allowed to access plaintiff's trade secrets.

The case comes before the Court on Convera's motion to dismiss for improper venue and/or to transfer the case to the Eastern District of Virginia, Convera's motion to dismiss for failure to state a claim and/or for a more definite statement, NGTL's motion to intervene, NGTL's motion to stay all proceedings pending arbitration between DSMCi and NGTL, and Convera's motion to compel arbitration. Upon review of the many motions filed in this case, the oral argument of counsel, and the applicable statutory and case law, this Court will GRANT NGTL's motion to intervene, DENY Convera's motions to dismiss, DENY Convera's motion to compel arbitration, and DENY NGTL's motion to stay these proceedings.

## BACKGROUND

DSMCi is a Maryland corporation with its principal place of business in Beltsville, Maryland. DSMCi is engaged in the business of software and systems integration and employs its proprietary software, architecture, and techniques to provide digitizing, cataloguing, archiving, and hosting services to media and non-media organizations that possess extensive audio, video and picture libraries. Convera is a Delaware corporation with its principal place of business in Vienna, Virginia. Convera, a far larger corporate entity than DSMCi, is a direct competitor of DSMCi in the design, development, marketing, implementation and support of products and services pertaining to the digitizing and management of audio, video, and picture libraries.

In September of 2000, DSMCi entered into a contract with NGTL that was designed to preserve and organize NGTL's unique film footage archive. NGTL is a subsidiary of National Geographic Television, which produces documentary television programs related to nature, natural history, world cultures, science, exploration, and other topics consistent with the education and conservation mission of its parent organization, the National Geographic Society. The contract required DSMCi to convert NGTL's video footage to digital format, and create a mechanism for organizing and searching that content, among other things. The contract required DSMCi to support the project through July of 2001.

The contract between DSMCi and NGTL included a confidentiality provision designed to protect DSMCi's trade secrets. DSMCi contends that it has spent over ten thousand hours and a million dollars developing valuable and proprietary trade secrets which include the software, architecture and functionality it used in the NGTL project.

DSMCi alleges that in May 2001, it determined that NGTL had violated the confidentiality agreement by providing unauthorized access to its trade secret information to Convera. DSMCi alleges that at least as early as May 2001 NGTL and Convera conspired to allow Convera to copy the software and architecture of the digital media system designed for NGTL by DSMCi. Among other things, DSMCi alleges that NGTL provided user name and access to the system to an affiliate of Convera. As a result, DSMCi alleges, Convera was able to reverse engineer and copy DSMCi's trade secrets.

Both NGTL and Convera deny DSMCi's allegations. NGTL responds that DSMCi's performance was continually deficient and consistently missed performance deadlines. NGTL contends that as a result of DSMCi's deficient performance, NGTL decided to not renew the contract and transferred the hosting function to another vendor. In the summer of 2001 NGTL informed DSMCi that it would be transferring the contract to Convera.

The contract between DSMCi and NGTL contained a provision requiring arbitration of any contract disputes. On October 31, 2001, after initial attempts at mediation, DSMCi filed a formal arbitration demand on NGTL. That arbitration is ongoing.

On November 1, 2001, DSMCi filed this lawsuit against Convera, alleging wrongful appropriation of trade secrets, unjust enrichment, and civil conspiracy. Convera responded by filing a motion to dismiss for improper venue or in the alternative to transfer the case to the Eastern District of Virginia. Convera also filed a motion to dismiss for failure to state a claim or in the alternative for a more definite statement. On December 17, 2001, NGTL filed a motion to intervene and a motion to stay this proceeding pending the outcome of the

arbitration between NGTL and DSMCi. On February 28, 2002 plaintiff amended its complaint to include claims under federal copyright laws. Convera renewed its motions to transfer and to dismiss.

This Court heard argument on the pending motions on April 9, 2002. At that hearing the Court identified further issues to be briefed by the parties and the intervenor-applicant. After fully briefing those issues, on April 25, 2002, defendant Convera filed a motion to compel arbitration. The briefing of that motion was completed on May 10, 2002.

During the course of this litigation, despite the fact that this Court had not yet ruled on defendants' motions to transfer or dismiss, the parties engaged in discovery. Several discovery motions are also pending before this Court. On March 29, 2002, this Court ordered all discovery stayed until further Order of this Court. Despite this Order, on May 30, 2002 defendant filed a motion to compel discovery, which this Court promptly denied in light of the stay.

## DISCUSSION

### I. Defendant Convera's Motion to Dismiss for Improper Venue and/or Transfer

Plaintiff's amended complaint includes the following five claims: 1) Misappropriation of Trade Secrets in violation of the D.C.Code; 2) the common law tort of Civil Conspiracy; 3) the common law tort of Unjust Enrichment;[1] 4) the federal Copyright Act; 5) the federal Digital Millennium Copyright Act. Defendant Convera has moved to dismiss all of these claims for lack of venue pursuant to 12(b)(3), and in the alternative to transfer the case to the Eastern District of Virginia.

Which federal venue statute applies depends on the basis for this Court's jurisdiction. This Court has jurisdiction over plaintiff's first two claims by virtue of diversity of citizenship of the parties, as DSMCi is a Maryland corporation with its principal place of business in Maryland and Convera is a Delaware corporation with its principle place of business in Virginia. The other two claims arise under federal statutes.

#### A. Diversity Claims

Because some but not all of plaintiff's claims arise under diversity jurisdiction, the venue provision at 28 U.S.C. § 1391(b) applies. That statute states:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). With respect to corporations, the venue statute also states: "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." § 1391(c).

DSMCi argues that this Court has venue over its diversity claims against Convera by virtue of the Court's personal jurisdiction over Convera. DSMCi argues further

---

1. At the hearing before this Court on April 9, 2002, plaintiff conceded that its unjust enrichment claim was precluded by federal law and this Court accordingly granted plaintiff's request to dismiss this claim without prejudice.

that this Court has personal jurisdiction, both because Convera has waived any challenge to personal jurisdiction and because of Convera's contacts with the District of Columbia. Convera responds that it has not waived jurisdiction because it previously brought to this Court's attention its "disagreement" with DSMCi's personal jurisdiction arguments.

■ This Court has personal jurisdiction over Convera by virtue of Convera's waiver. *See* Fed.R.Civ.P. 12(g) and (h). Convera's failure to move to dismiss for lack of personal jurisdiction is fatal. *See Simpkins v. District of Columbia Govt.,* 108 F.3d 366, 368 (D.C.Cir.1997). However, this Court does not have venue simply by virtue of this waiver and must make a separate inquiry into whether personal jurisdiction exists.

The venue statute states "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction *at the time the action is commenced.*" § 1391(c) (emphasis added). This language requires an independent inquiry into whether personal jurisdiction was appropriate at the time the plaintiff filed the lawsuit, not as of the time defendant failed to object to jurisdiction. At least one District Court has interpreted this statute to require an independent assessment of jurisdiction. *See Wine Markets Intern., Inc. v. Bass,* 939 F.Supp. 178 (E.D.N.Y.1996)(holding that in determining whether party would be subject to personal jurisdiction in state, for purpose of ruling on motion to transfer venue, Court should assess situation as it existed when complaint was filed, irrespective of subsequent consent or waiver). Plaintiff has cited two unpublished district court cases that denied venue challenges based solely on a corporation's waiver of objection to personal jurisdiction. *See Chavis v. A–1 Limousine and Home State Ins.,* 1998 WL 78290, at *3 (S.D.N.Y.1998); *Soli-*

*Tech, Inc. v. Halliburton Co.,* 1993 WL 315358, at *2 (E.D.Mich.1993). At least one other District Court has held this as well: *Zumbro, Inc. v. California Natural Products,* 861 F.Supp. 773 (D.Minn.1994). However, none of these cases attempted to account for the statutory language "at the time the action is commenced." § 1391(c). Therefore, this Court does not find these cases persuasive.

Because venue hinges on the existence of jurisdiction at the time a complaint is filed, this Court must make an independent inquiry into the basis for personal jurisdiction. The District of Columbia's personal jurisdiction statutes, D.C.Code § 13–423 and § 13–334, apply here. Section 13–423 provides for personal jurisdiction in the District of Columbia as to a claim for relief arising from the person's—

(1) transacting any business in the District of Columbia;

(2) contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

*Id.* Plaintiff argues that (a)(1) and (a)(3) apply by virtue of Convera's alleged conspiracy with NGTL, and (a)(4) applies directly to Convera's alleged conduct. Convera argues that DSMCi has failed to met the heightened pleading standard for venue based on conspiracy claims, and that it has not caused any injury within the District of Columbia.

#### 1. § 13–423(a)(1) and (3)

Plaintiff has charged Convera with participating in a civil conspiracy with NGTL to steal trade secrets. It is undisputed that NGTL is headquartered in Washington, DC. Plaintiff argues that actions by a co-conspirator within the subject forum, are sufficient to subject a nonresident co-conspirator to personal jurisdiction in that forum. *Dooley v. United Technologies Corp.,* 786 F.Supp. 65, 78 (D.D.C.1992); *Mandelkorn v. Patrick,* 359 F.Supp. 692 (D.D.C.1973).

■ This Court in *Dooley* explained that a plaintiff seeking to carry its burden of proving personal jurisdiction under § 13–423(a)(1) must show: first, that the defendant transacted business in the District of Columbia; second, that the claim arose from the business transacted in D.C.; and third, that the defendant had minimum contacts with the District of Columbia such that the Court's exercise of personal jurisdiction would not offend "traditional notions of fair play and substantial justice." *International Shoe v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *see also Dooley,* 786 F.Supp. at 71. Furthermore, the plaintiff has the burden of establishing that jurisdiction exists. *See Lott v. Burning Tree Club, Inc.,* 516 F.Supp. 913, 918 (D.D.C. 1980). For purposes of determining jurisdiction, facts asserted by the plaintiff in his Complaint will be presumed to be true unless directly contradicted by affidavit. *Data Disc, Inc. v. Systems Tech. Assocs., Inc.,* 557 F.2d 1280, 1284 (9th Cir.1977). Finally, the plaintiff need make only a prima facie showing to prevail on a motion to dismiss for want of jurisdiction. *Chase v. Pan–Pacific Broadcasting, Inc.,* 617 F.Supp. 1414 (D.D.C.1985).

■ Courts in this Circuit after *Mandelkorn v. Patrick,* 359 F.Supp. 692 (D.D.C.1973), have applied the conspiracy theory of jurisdiction warily. *Dooley,* 786 F.Supp. at 78. In seeking to prevent a broad extension of long-arm jurisdiction by the mere allegation of conspiracy, courts have required particularized pleading of the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy. *See First Chicago Int'l v. United Exchange Co., Ltd.,* 836 F.2d 1375, 1378–79 (D.C.Cir.1988). Also, mere speculation that the nonresident defendants are co-conspirators is insufficient to meet plaintiff's prima facie burden. *Hasenfus v. Corporate Air Services,* 700 F.Supp. 58, 62 (D.D.C.1988). The D.C. Circuit has explained, "It is settled a plaintiff 'must allege specific acts connecting [the] defendant with the forum,' and that the 'bare allegation' of conspiracy or agency is insufficient to establish personal jurisdiction." *First Chicago Int'l,* 836 F.2d at 1378 (citations omitted).

■ The parties dispute whether plaintiff has sufficiently alleged the existence of a conspiracy, and the connection of that conspiracy with the District of Columbia. The relevant specific acts alleged to comprise the conspiracy between NGTL and Convera included in plaintiff's complaint do not give the specific locations of the alleged actions. However, plaintiff clearly alleges that NGTL disclosed information by granting Convera access to the information systems at issue here. Defendant admits that Convera was granted access, but alleges that the relevant actions took place between Convera employees in California and NGTL's internet servers in Maryland. In response, plaintiff has submitted several e-mails, filed pursuant to a protective order, from individuals at NGTL's offices in D.C. to Convera employees.

Convera's argument that the interactions between Convera employees and NGTL employees occurred via a server located in Maryland is a red herring. The

alleged conspiracy was not between the computer server and Convera, but between the companies' employees. It is undisputed that NGTL's employees were located in the District. The fact that the server is located in Maryland does not undermine the allegations that the relevant actions by NGTL employees, in conspiracy with Convera employees, took place at NGTL's headquarters in D.C. The e-mails sent by NGTL employees located in the District to Convera employees are actions in furtherance of the alleged conspiracy. While it is a close question, conspiracy theory of personal jurisdiction is appropriate here.

Furthermore, traditional notions of fair play and substantial justice are not offended by asserting personal jurisdiction over Convera here. Convera has substantial contacts with the District of Columbia by virtue of having assumed the lucrative contract with NGTL formerly possessed by DSMCi. The contract is worth millions of dollars. Convera has availed itself of the protections and privileges of the District by entering into a substantial contract with a business located here. Although plaintiff's claims with respect to its trade secrets occurred prior to that contract, and can not be said to arise out of that contract, it certainly is fair to say that Convera would not be inconvenienced by a lawsuit in this jurisdiction. This is further supported by the fact that Convera wants to transfer this case to the abutting jurisdiction of the Eastern District of Virginia.

### 2. § 13–423(a)(4)

Plaintiff argues that this Court also has personal jurisdiction by virtue of § 13–423(a)(4). Section 13–423(a)(4) allows for personal jurisdiction over defendants "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia."

Plaintiff alleges that as a result of the alleged conspiracy between Convera and NGTL, plaintiff lost a very lucrative contract with NGTL. Plaintiff argues that because this contract was to be performed in the District, the injury to DSMCi in the form of the loss of the contract, occurred in the District. Therefore, argues plaintiff, § 13–423(a)(4) applies. Defendant responds that any alleged injury to DSMCi was financial, and therefore as a matter of law occurred where DSMCi is located, in Maryland.

Unfortunately, neither party cites any case law to support its argument about where the injury should be deemed to have occurred. This Court need not resolve this dispute in light of the holding that venue is appropriate pursuant to § 13–423(a)(1) and (3).

### 3. § 13–334

Section 13–334 of the D.C.Code allows for service of process on foreign corporations doing business in the District. *See* § 13–334("a) In an action against a foreign corporation doing business in the District, process may be served on the agent of the corporation or person conducting its business, or, when he is absent and can not be found, by leaving a copy at the principal place of business in the District, or, where there is no such place of business, by leaving a copy at the place of business or residence of the agent in the District, and that service is effectual to bring the corporation before the court."). Plaintiff argues that pursuant to D.C. law, this statute also provides an independent basis for personal jurisdiction. However, even if this is an accurate statement of D.C. law, it is uncontested that service of process was not effectuated within the District of Columbia.

For this reason, § 13–334 does not apply and this Court need not reach the issue of whether this section alone can support personal jurisdiction.

### B. *Federal claims*

Plaintiff's federal copyright claims in Counts IV and V are governed by 28 U.S.C. § 1400(a). That venue statute states:

> Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found.

28 U.S.C. § 1400(a). This provision is subject to the definition of residence for corporations in 28 U.S.C. § 1391(c) discussed above. *See* § 1391(c)("a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced"). Section 1391(c) explicitly applies "[f]or purposes of venue under this chapter." *Id.*

Thus, once again, whether this Court has venue for these claims turns on whether this Court can assert personal jurisdiction over this defendant. For the reasons given above, this Court does have personal jurisdiction by virtue of the alleged conspiracy. Therefore because Convera is subject to the personal jurisdiction of this Court at the time this action was commenced, Convera is deemed to reside in the District of Columbia pursuant to § 1391(c). Because Convera can be said to reside in the District, venue is proper pursuant to § 1400(a).

### C. *Transfer Justification*

 Transfer is only appropriate if venue exists in the District to which the case is to be transferred. Convera does not devote much time to the justification for a transfer of this case to the Eastern Dis-

trict of Virginia in particular. Convera simply argues that venue is appropriate there, and certain factors in the "interests of justice" test would support such a transfer. Plaintiff correctly responds that two of the three factors stated by Convera are irrelevant: first, that DSMCi has Virginia-based counsel, and second, that the Fourth Circuit is familiar with cases involving the internet. The other factor cited by Convera, that Virginia law will apply to this case, remains to be determined. It is unclear to this Court why the interests of justice will be served by a transfer to an abutting jurisdiction when venue exists in both districts. In light of the strong presumption in favor of plaintiff's choice of a forum, defendants' justification for transfer is unpersuasive.

## II. Defendant Convera's Motion to Dismiss for Failure to State a Claim

### A. *Federal Rules of Civil Procedure 12(g) and (h)*

Convera has also moved to dismiss DSMCi's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Before addressing the merits of the parties' argument, the Court must make note of defendant's failure to comply with the Federal Rules. This Court could deny defendant's motion to dismiss in its entirety for defendant's failure to comply with Federal Rule of Civil Procedure 12(g) and (h). In response to plaintiff's original complaint, defendant Convera filed no less than four independent motions to dismiss. Those motions were mooted by the amended complaint. In response to plaintiff's amended complaint, defendant Convera has again filed two separate motions to dismiss. The motion to dismiss pursuant to 12(b)(3) for lack of venue discussed above was filed first, followed by the motion to dismiss for fail-

ure to state a claim pursuant to Rule 12(b)(6).

 It is an elementary rule of civil procedure that a party shall file one motion which contains all defenses brought pursuant to Rule 12. Rule 12(g) states

A party who makes a motion under this rule may join with it any other motions herein provided for and then available to the party. If a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated.

Fed.R.Civ.P. 12(g). Thus, the only exceptions to the requirement that all defenses be contained in one motion are listed in Rule 12(h)(2):

A defense of failure to state a claim upon which relief can be granted, a defense of failure to join a party indispensable under Rule 19, and an objection of failure to state a legal defense to a claim may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits.

Fed.R.Civ.P. 12(h)(2). Rule 7(a) limits pleadings to a complaint and answer, and other responses where appropriate. Thus, the defense of failure to state a claim must be brought in the one motion to dismiss, or in an answer. The Federal Rules of Civil Procedure do not permit a second motion to dismiss to be filed.

However, because Rule 12(h)(2) does allow a motion for judgment on the pleadings that asserts the defense of failure to state a claim to be filed at any time, even after a previous motion to dismiss has been filed, defense counsel's decision to file multiple motions to dismiss was harmless error.

**B. *Standard of Review***

This Court will not grant the defendant's motions to dismiss pursuant to Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kowal v. MCI Communications Corp.,* 16 F.3d 1271, 1276 (D.C.Cir.1994). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A motion to dismiss is intended to test the sufficiency of the complaint and the complaint alone. *See, e.g., Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Tele–Communications of Key West v. U.S.,* 757 F.2d 1330, 1335 (D.C.Cir.1985) ("a Rule 12(b)(6) disposition must be made on the face of the complaint alone"). Accordingly, at this stage in the proceedings, the Court must accept as true all of the complaint's factual allegations. *See Doe v. United States Dep't of Justice,* 753 F.2d 1092, 1102 (D.C.Cir.1985). Plaintiff is entitled to "the benefit of all inferences that can be derived from the facts alleged." *Kowal,* 16 F.3d at 1276.

**C. *Trade Secrets Claims***

 Convera argues that the first three Counts of DSMCi's Complaint, misappropriation of trade secrets, civil conspiracy, and unjust enrichment, all fail because DSMCi has not alleged the trade secrets at issue with sufficient factual particularity. Convera argues that DSMCi has failed to plead with the specificity required for a trade secrets act claim for two reasons: first, only certain software named in the DSMCi–NGTL contract is

subject to "reverse engineering" prohibitions and DSMCi's allegations failed to name that specific software; and second, the database Convera alleged improperly accessed was the property of NGTL not DSMCi and therefore DSMCi has no claim to it. Convera further argues that the civil conspiracy claim is contingent on proving the violation of the trade secrets statute, and therefore because DSMCi has failed to state what trade secrets are at issue with sufficient particularity, the conspiracy claim fails as well. Finally, as discussed above, the unjust enrichment claim was previously dismissed without prejudice by this Court and need not be discussed here.

Convera's arguments are unpersuasive. Convera fails to apply the standard for notice pleading under Federal Rule of Civil Procedure 8. *Swierkiewicz v. Sorema,* 534 U.S. 506, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002). The cases cited by Convera in support of this argument are primarily cases discussing the standard of proof on the merits at the summary judgment stage. Furthermore, one case relied on by Convera extensively, *IDX Systems Corp. v. Epic Systems Corp.,* actually explicitly holds that there is no heightened pleading for trade secrets claims: "plaintiff is not and cannot be expected to plead its trade secrets in detail. Such a public disclosure would amount to an effective surrender of trade secret status." 165 F.Supp.2d 812, 817 (W.D.Wis.2001) The usual notice pleading requirements under Rule 8 therefore apply. Pursuant to notice pleading, DSMCi has sufficiently alleged claims of misappropriation of trade secrets and civil conspiracy.

D. *Federal Copyright Claims*

1. *Copyright Act and Digital Millennium Copyright Act*

■ Once again, Convera argues that there is a heightened pleading standard for copyright cases, but cites no authority from this Circuit for that proposition. Further, Convera gives no justification as to why this Court would adopt such a heightened pleading requirement based on the nature of copyright actions. Furthermore, DSMCi cites many copyright cases that hold the oppositethat there is no heightened pleading requirement. These cases rely on the Supreme Court's holding in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), which held that the *only* two types of cases with a heightened pleading requirement under the Federal Rules are claims involving fraud or mistake. *Id.* at 168, 113 S.Ct. 1160. Convera's dismissal of the *Leatherman* decision as limited to the pleading requirements for civil rights statutes is unpersuasive.

■ DSMCi has sufficiently alleged all the elements of both copyright claims, save one. While a later-approved copyright application relates back to the date that the application, deposit and fee were received, a claim under the Copyright Act or Digital Millennium Copyright Act can not be brought prior to actually applying to register a copyright. Plaintiff's amended complaint was filed on February 28, 2002. Plaintiff admits that it mailed via Federal Express its copyright application on this same date, and that it was not received by the U.S. Copyright Office until March 1, 2002. Thus, technically, plaintiff's copyright claim was filed in this Court prior to its application for a copyright and is legally barred. However, in the interests of justice, the Court will nonetheless deny the motion to dismiss and grant plaintiff leave to amend its complaint to properly bring the copyright claims after the registration date.

### III. NGTL's Motion to Intervene

NGTL has moved to intervene in this case pursuant to Rule 24(a) and (b). Initially, NGTL moved to intervene for the limited purpose of requesting a stay of this case pending the outcome of the arbitration between DSMCi and NGTL. After admitting at the hearing before this Court that no precedent supports intervention in a case pursuant to Rule 24 for such a limited purpose, NGTL changed its position and now wishes to intervene as a defendant for all purposes. NGTL has not, however, also waived its right to insist on arbitration of its dispute with DSMCi pursuant to the contract between them. It is undisputed that the arbitration clause in that contract requires any dispute between DSMCi and NGTL related to that contract to be arbitrated rather than litigated unless both parties waive that right. Thus, this Court is faced with a peculiar dilemma-whether to allow an interested party to intervene as a party defendant when it has not waived its right to insist on arbitration of any claims between it and plaintiff. Finally, the added complication, discussed below, is that NGTL has joined in defendant Convera's request to compel arbitration among all three parties, despite the fact that there is no arbitration agreement between DSMCi and Convera.

Federal Rule of Civil Procedure 24 has two mechanisms for allowing a party to intervene: intervention as of right pursuant to Rule 24(a) and permissive intervention pursuant to Rule 24(b). Because NGTL has not established a legally cognizable interest adversely affected by this litigation, the Court will deny its request to intervene as of right pursuant to Rule 24(a). However, because NGTL and Convera have asserted a common defense, whether this Court will allow permissive intervention turns on whether such intervention will further the dual interests of justice and efficiency.

### A. *Rule 24(a) Intervention as of Right*

■ Intervention as of right is permitted by Federal Rule of Civil Procedure 24(a) only when the proposed intervener meets four requirements: 1) the application to intervene must be timely, 2) the party must have an interest relating to the property or transaction which is the subject of the action, 3) the party must be situated so that the potential disposition of the action may impair or impede the party's ability to protect that interest, and 4) the party's interest must not be adequately represented by existing parties to the action. *See, e.g., Building and Construction Trades Department, AFL–CIO v. Reich,* 40 F.3d 1275, 1282 (D.C.Cir.1994). The D.C. Circuit has further explained that the proposed intervener's interest in the lawsuit can not be any potential interest, but must be a legally protectable interest. *Cleveland v. Nuclear Regulatory Comm'n,* 17 F.3d 1515, 1517 (D.C.Cir.1994). As a practical matter, this means that the proposed intervener "would suffer harm from an adverse decision on the merits." *Alaska v. Federal Energy Regulatory Comm'n,* 980 F.2d 761, 763 (D.C.Cir.1992).

■ NGTL has not demonstrated the harm it would suffer from any ruling on the merits by this Court. NGTL argues first that this litigation has the potential to adversely impact its interests because in the event that Convera were held liable to DSMCi, Convera will seek indemnification from NGTL. *See* NGTL's Mot. to Intervene, Ex. 1. There are two contingencies that precede any liability of NGTL to Convera under any indemnity agreement that may exist between them: first, Convera must lose this lawsuit, and second, Convera must succeed in holding NGTL liable for indemnification. Many courts outside this Circuit have held such potential harm caused by an indemnification agreement to be too attenuated to justify

intervention as of right because that harm is contingent on intervening events. *See, e.g., Travelers Indemnity Co. v. Dingwell,* 884 F.2d 629, 638 (1st Cir.1989); *Restor–A–Dent Dental Laboratories Inc. v. Certified Alloy Products, Inc.,* 725 F.2d 871, 875–76 (2d Cir.1984). This Court is persuaded by the reasoning of these cases. The possibility of indemnification liability is too attenuated to justify mandatory intervention.

NGTL also argues that its interests are implicated because the arbitrator would be bound by the doctrine of collateral estoppel and issue preclusion to follow factual and legal determinations of this Court. This estoppel argument is unpersuasive. NGTL initially made this estoppel argument in a conclusory manner without citing any case law to support its position. At the hearing before this Court, when challenged to provide support for this argument, NGTL requested a further opportunity to brief the issue, which the Court granted. Having reviewed the briefs submitted by the parties on the estoppel issue, the Court finds NGTL's argument unconvincing.

■ First of all, the parties have not briefed the estoppel issue relevant to the question of intervention: whether NGTL's interests will be adversely impacted by this litigation because determinations of this Court will have a preclusive effect in arbitration. The estoppel issue briefed by the parties relates to the propriety of this Court issuing a stay pending the outcome of arbitration between DSMCi and NGTL. The estoppel issue briefed by the parties with respect to the stay request is whether this litigation may be narrowed or eliminated by the arbitrator's decision. Thus, one issue focuses on the impact of the court on the arbitration, and the other on the impact of the arbitration on the court. As NGTL has presented no case law to support its argument that this Court's de-

cisions with respect to DSMCi's claims against Convera will have a preclusive effect on the arbitration of claims between DSMCi and NGTL, this Court rejects that argument. The burden of demonstrating its fulfillment of the requirements of Rule 24(a) is squarely on the intervenor-applicant, NGTL. Conclusory, unsupported arguments are insufficient to meet this burden.

Finally, NGTL admits the harm with which it is concerned-discovery by DSMCi. NGTL complains that DSMCi would be able to engage in "one-sided discovery from Convera—and NGTL." NGTL's Mot. to Intervene at 8. DSMCi will most definitely not be permitted by this Court to engage in "one-sided" discovery with Convera—discovery in this case will proceed efficiently and fairly. Whether or not DSMCi would be able to serve third-party discovery requests on NGTL depends on the rules that govern such requests. Once again, NGTL cites no case law that supports its argument that the threat of third-party discovery is an interest sufficient to justify intervention pursuant to Rule 24(a).

Because the Court holds that NGTL has not articulated an interest to be adversely impacted by this litigation, there is no need to reach the other factors, timeliness, impairment of interest, and adequacy of representation, of the intervention as of right analysis.

## B. *Rule 24(b) Permissive Intervention*

■ Rule 24(b) allows intervention "when a statute of the United States confers a conditional right to intervene," or "an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b). This determination is discretionary, and "[i]n exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the

rights of the original parties." Fed. R.Civ.P. 24(b).

Initially, when NGTL moved to intervene for the limited purpose of requesting a stay, the Rule 24(b) analysis was straightforward. Because NGTL was asserting no claim or defense in this case, but only moving to request a stay, NGTL failed to satisfy the requirement that "an applicant's claim or defense and the main action have a question of law or fact in common." Fed.R.Civ.P. 24(b). Now that NGTL has decided to move to intervene for all purposes, the analysis becomes more complex.

NGTL does not purport to rely on a federal statute, arguing instead commonality of questions of law and fact. NGTL argues that this case and the arbitration between NGTL and DSMCi share many common questions of law and fact. Clearly the facts at issue in the arbitration and this litigation at least in part overlap: determining whether NGTL violated its contract by revealing information to Convera, and whether Convera conspired with NGTL to receive the information will involve much of the same factual development.

NGTL and Convera share the common defense of the arbitration clause of the DSMCi–NGTL contract and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* Both NGTL and Convera argue that pursuant to the equitable estoppel doctrine DSMCi should be compelled to arbitrate its claims against both NGTL and Convera.

Allowing NGTL to intervene will not unduly prejudice or delay these proceedings. The question of whether this Court should stay this case pending arbitration, or compel all three parties to arbitrate has been fully briefed by all three parties already. Allowing NGTL to intervene will not require delay while NGTL has an opportunity to brief these issues. Nor will bringing NGTL into this litigation prejudice either DSMCi or Convera. Convera has consented to the intervention, and DSMCi no longer objects to NGTL's intervention now that NGTL has moved to intervene for all purposes. All parties agree that justice and efficiency will be served by litigating or arbitrating plaintiffs' claims against Convera and NGTL in one forum.

For these reasons, NGTL's motion to intervene will be granted.

## IV. Defendant Convera's Motion to Compel Arbitration

On April 25, 2002, Convera moved this Court to compel DSMCi to arbitrate its claims against Convera.[2] Convera and NGTL argue that this Court has the authority pursuant to the doctrine of equitable estoppel to order DSMCi to arbitrate claims related to its contract with NGTL against a non-signatory to that agreement. In response, DSMCi argues first that

---

**2.** The Court notes that at the hearing on April 9, 2002, this Court granted the parties leave to file supplemental briefs related to the issues presented by counsel to the Court that day, which included the issue of whether this Court can compel DSMCi to arbitrate its claim against Convera. The parties filed those supplemental briefs and responses, which in part addressed this issue, and fully complied with the Court-imposed deadlines and page limitations. Then, without explanation and without requesting leave to file from this Court, Convera also chose to file this additional motion, prompting yet another round of briefing from the parties that exceeded both the page limitations and deadlines for briefing on these issues imposed by this Court on April 9, 2002. While this Court will not deny Convera's motion on these grounds alone, Convera's repeated and excessive motions practice has not gone without this Court's notice. *See* Order of 6/5/02. Any further improper and excessive filings will result in appropriate sanctions.

Convera has waived any right to request arbitration by its participation thus far in this lawsuit,[3] and second, that this Court should not adopt an equitable estoppel rule that has not yet been recognized in the D.C. Circuit.

■ The Supreme Court and this Circuit have repeatedly held that a party can not be compelled to arbitrate a dispute that it has not contractually agreed to arbitrate. *See, e.g., Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 122 S.Ct. 754, 764, 151 L.Ed.2d 755 (2002); *Air Line Pilots Assoc. v. Miller*, 523 U.S. 866, 876, 118 S.Ct. 1761, 140 L.Ed.2d 1070 (1998) ("Ordinarily, 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'") (*quoting United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)); *see also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) ("a party who has not agreed to arbitrate will normally have a right to a court's decision about the merits of its dispute.... arbitration is simply a matter of contract between the parties; it is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration."); *Bailey v. Fed. Nat'l Mortgage Assoc.*, 209 F.3d 740, 746 (D.C.Cir.2000). Most recently in *Waffle House*, the Supreme Court addressed whether the Equal Employment Opportunity Commission (EEOC) could be compelled to arbitrate a discrimination claim against an employer when the employee who was subject to the discrimination signed an agreement to arbitrate all claims related to employment. 122 S.Ct. at 764. The Supreme Court held that the EEOC could *not* be compelled to arbitrate because it was not a signatory to

the contract agreeing to arbitration and had independent statutory basis for bringing suit. 122 S.Ct. at 764. The Court held that "[a]bsent some ambiguity in the agreement, however, it is the language of the contract that defines the scope of disputes subject to arbitration.... For nothing in the [Federal Arbitration Act] authorizes a court to compel arbitration of any issued, or by any parties, that are not already covered in the agreement." *Id.* at 762. The Court was emphatic: "It goes without saying that a contract cannot bind a nonparty." *Id.* at 764. Similarly in *Air Line Pilots Assoc.*, the Supreme Court held that non-union members who objected to certain use of funds by a union but who were not bound by the union membership agreement that contained an arbitration clause could not be compelled to arbitrate their claims. 523 U.S. at 879–80, 118 S.Ct. 1761 ("We hold that, unless they agree to the procedure, agency-fee objectors may not be required to exhaust an arbitration remedy before bringing their claims in federal court.").

■ While it is clear that a non-signatory can not be compelled to arbitrate a claim, neither the Supreme Court nor this Circuit have directly addressed the issue of whether a willing non-signatory to an arbitration agreement can compel a signatory to arbitrate its claims against the non-signatory. Dicta in the Supreme Court's decision in *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), supports the holding that such arbitration can not be compelled. Like this case, *Moses* involved a plaintiff, the Hospital, with two distinct but related disputes with two parties, defendant Mercury Construction and an architect. Only the Hospital's *dispute* with Mercury Construction was subject to

---

**3.** Because this Court holds that it will not compel DSMCi to arbitrate its claims against Convera, it need not reach the issue of waiver.

an arbitration clause. The *Moses* Court observed:

The Hospital points out that it has two substantive disputes here—one with Mercury, concerning Mercury's claim for delay and impact costs, and the other with the Architect, concerning the Hospital's claim for indemnity for any liability it may have to Mercury. *The latter dispute cannot be sent to arbitration without the Architect's consent, since there is no arbitration agreement between the Hospital and the Architect.* It is true, therefore, that if Mercury obtains an arbitration order for its dispute, the Hospital will be forced to resolve these related disputes in different forums. That misfortune, however, is not the result of any choice between the federal and state courts; it occurs because the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement. Under the Arbitration Act, an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement. If the dispute between Mercury and the Hospital is arbitrable under the Act, then the Hospital's two disputes will be resolved separately—one in arbitration, and the other (if at all) in state-court litigation.

460 U.S. at 19–20, 103 S.Ct. 927 (emphasis added).

Convera and NGTL urge this Court to apply the doctrine of equitable estoppel to compel DSMCi to arbitrate its claims against Convera. While neither the Supreme Court nor the D.C. Circuit has directly addressed this issue, several other Circuits have held that equitable estoppel can apply to this situation. *See, e.g., In re: Humana Inc. Managed Care Litigation,* 285 F.3d 971 (11th Cir.2002); *Grigson v. Creative Artists Agency, LLC,* 210 F.3d 524 (5th Cir.2000); *International Paper Company v. Schwabedissen Maschinen & Anlagen GMBH,* 206 F.3d 411 (4th Cir. 2000); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.,* 10 F.3d 753 (11th Cir. 1993); *Hughes Masonry Co., Inc. v. Greater Clark County Sch. Bldg. Corp.,* 659 F.2d 836, 841 n. 9 (7th Cir.1981).

The Eleventh Circuit has held several times that equitable estoppel may be invoked to compel a plaintiff to arbitrate claims against a nonsignatory defendant if the plaintiff's claims are "based upon, and inextricably intertwined with, the written agreement" that contains the arbitration clause. *In re Humana,* 285 F.3d at 975. "The plaintiff's actual dependance on the underlying contract in making out the claim against the nonsignatory defendant is therefore always the *sine qua non* of an appropriate situation for applying equitable estoppel." *Id.* at 976. Applying the reasoning of the Eleventh Circuit, DSMCi may be compelled to arbitrate its claims against Convera if those claims are based on and inextricably intertwined with the contract between DSMCi and NGTL. Regardless of the availability of this doctrine in this Circuit, none of the four remaining claims, for the misappropriation of trade secrets, civil conspiracy, and the federal copyright claims are "inextricably intertwined" with contractual obligations owed DSMCi by NGTL pursuant to the contract.[4] While NGTL allegedly failed to

---

4. Defendant Convera's April 16, 2002 Supplemental Memorandum purports to explain the relationship between the issues at stake in this litigation and in the arbitration between DSMCi and NGTL. While the three factual issues explained by Convera may or may not overlap, those factual issues do not depend on an interpretation of the contract between DSMCi and NGTL. The fact that these factual allegations may be similar or identical does not mean that DSMCi's claims against Convera are inextricably intertwined with the agreement between DSMCi and NGTL.

observe its contractual obligation to maintain the confidentiality of certain information, Convera's obligation to DSMCi, should one be proven to exist, does not arise out of that contract, but rather from state and federal statutes and common law.

DSMCi has not sued Convera for example, for tortious interference with the contract between DSMCi and NGTL. Such a claim would turn on the Court's interpretation of the agreement's provisions and Convera's conduct with respect to that agreement. *See, e.g., Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524 (5th Cir.2000) (applying equitable estoppel to require plaintiff to arbitrate claim of tortious interference with contract against non-signatory to contract containing arbitration clause). This case is also distinguishable from another equitable estoppel arbitration case relied upon by Convera and NGTL, *International Paper Company v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411 (4th Cir.2000). The plaintiff in *International Paper* sued the manufacturer of a saw as a third party beneficiary of the guarantees and warrantees in a contract between the manufacturer and distributor of the saw. *Id.* at 413. The Fourth Circuit held that plaintiff could not sue based pursuant to contractual provisions without also complying with the contract's arbitration provision. *Id.* at 413–14.

This Court need not hold as a matter of law whether equitable estoppel may or may not be invoked to compel arbitration of claims against a non-signatory to a contract in the D.C. Circuit. Even if such an argument were available in this Circuit, none of DSMCi's remaining claims against

Convera turn on this Court's interpretation of the agreement between DSMCi and NGTL. Convera's motion to compel is therefore denied.

## V. NGTL's Motion to Stay Pending Arbitration

NGTL has moved to stay this litigation pending the resolution of the arbitration between DSMCi and NGTL. DSMCi opposes this motion, and while Convera initially expressed no opinion, Convera now consents to this motion. This Court does have the authority and discretion[5] to stay this case pending the prompt resolution of the arbitration in question. *See, e.g., Air Line Pilots Assoc. v. Miller*, 523 U.S. 866, 876 n. 6, 118 S.Ct. 1761, 140 L.Ed.2d 1070 (1998) ("Our recognition of the right of objectors to proceed directly to court does not detract from district courts' discretion to defer discovery or other proceedings pending the prompt conclusion of arbitration."); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n. 23, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket."); *Landis v. North American Co.*, 299 U.S. 248, 254–255, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of

---

**5.** This Court does not agree with NGTL's suggestion that the Federal Arbitration Act mandates a stay of this litigation. *See* NGTL's Mot. to Stay at 7 n. 3. The mandatory stay provision of the Act applies only to parties to the arbitration agreement. *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 529–30 (7th Cir.1996). Whether or not to issue a stay is a matter for this Court's discretion.

judgment, which must weigh competing interests and maintain an even balance."").

NGTL argues that the following factors weigh in favor of staying this litigation: the outcome of arbitration could limit or narrow the issues before this Court, the outcome of this case could have precedential effect on the arbitration, judicial economy, avoiding the risk of inconsistent determinations on the same factual issues, and the strong national policy in favor of arbitrating disputes. NGTL's Mot. to Stay at 1–2.

NGTL makes two arguments with regard to preclusive effect and the relationship between arbitration and litigation. First, NGTL argues that this Court should stay this litigation because the issues before this Court will be narrowed by the result of the arbitration. NGTL's Mot. to Stay at 1; NGTL's Supp. Mem. of 4/23/02 at 1. Second, NGTL argues that this Court should stay this litigation "in order to guard against the possible precedential effect that an adverse court ruling in this litigation could have on the parallel arbitration." NGTL's Reply at 7.

NGTL's first argument that decisions made by the arbitrator of DSMCi's claims against NGTL will have a preclusive effect in this Court is unpersuasive. This Court recognizes that there are many overlapping factual issues common to both the arbitration and this litigation. However, the simple fact that these issues may be resolved in both fora does not mean that this Court will be bound by the determination of the arbitrator. While NGTL cited *no authority* to support this argument in its initial motion to stay and reply brief, in response to this Court's request at oral argument, NGTL cited the following four cases: *Mandich v. Watters*, 970 F.2d 462 (8th Cir.1992), *Central Transport, Inc. v. Four Phase Sys. Inc.*, 936 F.2d 256, 260 (6th Cir.1991); *Norris v. Grosvenor Marketing Ltd.*, 803 F.2d 1281, 1285 (2d Cir.

1986), and *Hogue v. Hopper*, 728 A.2d 611 (D.C.Ct.App.1999). None of these cases comports with the collateral estoppel standard in this Circuit.

With respect to the impact of this Court's factual determinations on the arbitrator's decision, NGTL again cites no case law. This Court will not prevent plaintiff from having its day in court based on unsupported assertions about preclusive effect. Neither NGTL nor Convera have met the heavy burden of persuading this Court that a stay is appropriate.

Moreover, judicial economy will not be served by granting a stay. It is unclear how long the arbitration proceeding will take to complete. Postponing the resolution of the issues raised in this case for some indefinite time does not comport with the efficient and timely judicial resolution of matters before the federal courts. Allowing a case to languish for years on this Court's docket would not serve the interest of this Court or the parties involved. A stay issued prior to the completion of discovery is particularly problematic, as with time evidence may be .lost and memories fade. Because this Court ultimately must resolve the issues presented by this case, that resolution will occur in a timely manner.

### CONCLUSION

While all parties in this case agree that ideally this litigation should be resolved in one forum, the parties simply cannot agree on whether that forum should be this Court or arbitration. For the reasons stated above, this Court will not deprive plaintiff of its right to pursue its claims against Convera in federal court. If that means that litigation must proceed in this Court against Convera, while NGTL asserts its right to arbitrate any disputes between it and DSMCi, as the Supreme Court said in *Moses H. Cone Memorial*

*Hospital,* "[t]hat misfortune ... occurs because the relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement." 460 U.S. at 19–20, 103 S.Ct. 927.

An appropriate Order accompanies this Memorandum Opinion.